Filed 5/31/23  P. v. Vidor CA1/1
Opinion following rehearing

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>            Plaintiff and Respondent,<br><br>v.<br><br>MATTHEW VIDOR,<br><br>            Defendant and Appellant. | A163804<br><br>(Sonoma County<br>Super. Ct. No. SCR-668037-1) |

This is the third appeal in this matter following appellant Matthew Vidor's convictions for carjacking and two related offenses which resulted in a prison sentence of 10 years and eight months.  On remand following the second appeal, the trial court found Vidor ineligible for mental health diversion (Pen. Code,[1] § 1001.36), concluding that his mental illness was not a significant factor in his criminal behavior.  After initially finding no abuse of discretion in the trial court's ineligibility determination, we granted Vidor's request for rehearing to consider the impact on our analysis from recent amendments to section 1001.36.  Having done so, we conclude that remand is appropriate so that the trial court may, in the first instance, apply the new

---

[1] All undesignated statutory references are to the Penal Code.  All rule references are to the California Rules of Court.

1

standards set forth in amended section 1001.36 when making its eligibility determination. In contrast, we reject Vidor's additional suggestions on rehearing that we remand for full resentencing based on recent changes to the sentencing laws.

## I. FACTUAL AND PROCEDURAL BACKGROUND[2]

In July 2015, Vidor took the car of an 85-year-old man while the man was loading groceries into his vehicle at a supermarket. The older gentleman jumped into the passenger seat in an attempt to go with his car, but Vidor pushed him out of the open passenger door while the vehicle was traveling 15 to 20 miles per hour. The victim received abrasions on both of his elbows. A police officer subsequently located the stolen vehicle and attempted to stop it, but Vidor failed to yield, entering a highway. The officer observed the vehicle weaving in and out of heavy traffic on the Petaluma River Bridge at speeds of 80 to 85 miles per hour. Vidor exited the highway, passed other vehicles using the right shoulder of the exit ramp, failed to stop at a stop sign, and re-entered the highway. He gained ground on the police pursuit even though the police vehicle was traveling at speeds of 100 to 110 miles per hour. The officer ultimately lost sight of the stolen vehicle on side streets in Novato.

---

[2] On February 3, 2022, we granted Vidor's request for judicial notice of the record in his appeal from the original judgment (see *People v. Vidor* (Sept. 27, 2018, A152527) [nonpub. opn.] (*Vidor I*)) as well as our second unpublished opinion in this matter (*People v. Vidor* (Dec. 3, 2020, A156690) [nonpub. opn.] (*Vidor II*)). (Evid. Code, §§ 452, subd. (d), 459, subd. (a); rule 8.1115(b)(1).) On our own motion, we additionally take judicial notice of our unpublished opinion in *Vidor I*. (Evid. Code, §§ 452, subd. (d), 459, subd. (a).) We derive much of the background in this matter from *Vidor I* and *Vidor II*. The facts regarding the underlying offenses are taken from the police reports which ultimately formed the factual basis for Vidor's plea.

Early the next morning, a San Francisco police officer stopped the car for vehicle code violations, including not having a rear license plate, discovered the vehicle was reported stolen, and arrested Vidor and his female passenger. When interviewed pursuant to *Miranda*,[3] Vidor stated he did not intend to injure the car's owner and admitted stealing the vehicle. He also acknowledged traveling faster than the posted speed limit to distance himself from the police pursuit.

Based on this incident, Vidor was charged that same month with carjacking (§ 215, subd. (a), count 1), fleeing a pursuing police vehicle while driving recklessly (Veh. Code, § 2800.2, count 2), and elder abuse (§ 368, subd. (b)(1), count 3). Count 1—a serious and violent felony pursuant to sections 667.95, subdivision (c) and 1192.7, subdivision (c)—was enhanced with a special allegation under section 667.9, subdivision (a), because the victim was elderly. (*Vidor II*, *supra*, A156690.) Early in the proceedings, the trial court appointed psychiatrist Dr. Donald Apostle to evaluate Vidor's competency. (*Vidor I*, *supra*, A152257.)

In a report dated July 31, 2015,[4] Dr. Apostle determined that Vidor, then 27 years old, was incompetent to stand trial. Vidor reported experiencing "delusions of grandeur" and being diagnosed with possible bipolar disorder when he was 18 or 19. He had been prescribed lithium, which did not help. He began using marijuana in the seventh grade, had used methamphetamine consistently for the last five years, and had abused a variety of other drugs, including LSD, mushrooms, Ecstasy, and MDMA. Vidor had recently become "increasingly delusional and fascinated with

---

[3] *Miranda v. Arizona* (1966) 384 U.S. 436.

[4] The bulk of the reports discussed herein were submitted as exhibits to Vidor's motion for mental health diversion in the trial court.

3

taking cars," which he had done three times since December 2014. Upon initial evaluation in July 2015, Vidor was thought to have a diagnosis of polysubstance dependence with psychosis, as well as possible post-traumatic stress disorder. In concluding that Vidor was incompetent, the doctor noted that "[t]here may be an underlying major mental health diagnosis but he needs to be off illicit drugs before that can definitively be stated." Based on Dr. Apostle's report, the trial court suspended criminal proceedings in August 2015. (*Vidor II*, *supra*, A156690.)

The following month, after defense counsel indicated a possible restoration of competency, the court re-appointed Dr. Apostle. The doctor re-evaluated Vidor and concluded that while he showed improvement, he was still incompetent to stand trial and should be placed in a hospital setting. An October 2015 report prepared by a hospital interdisciplinary treatment team pursuant to section 1370[5] confirmed Vidor's continued incompetency to stand trial. He was diagnosed as having severe amphetamine-type substance use disorder, severe alcohol use disorder, and moderate cannabis use disorder. The report concluded that Vidor "probably might have had a drug induced psychosis," based on his significant history of substance abuse. It noted that Vidor was showing no apparent delusions and was fully oriented, even though he was not currently prescribed any antipsychotic medication.

On November 25, 2015, the hospital's medical director submitted a certification of mental competency. In an accompanying report, the hospital's treatment team noted that Vidor's symptoms—primarily paranoid

---

[5] Section 1370 sets forth the required procedure for transferring defendants who have been found mentally incompetent to stand trial to the State Department of State Hospitals for treatment.

4

delusions—had improved despite him not being on psychotropic medications.[6] Vidor also was "not showing obvious symptomatology for psychopharmacological therapy."

The trial court determined Vidor was competent, and criminal proceedings were reinstated on December 11, 2015. (*Vidor I*, *supra*, A152257.) Vidor ultimately entered an open plea to all charges in March 2016. (*Vidor II*, *supra*, A156690.) On July 19, 2016, the trial court imposed and suspended a sentence of 10 years, eight months, placing Vidor on formal probation for four years on the condition that he serve one year in county jail and enter the Jericho Project drug and alcohol treatment program (Jericho). (*Vidor II*, *supra*, A156690.)

On August 28, 2016, nine days after his admission, Vidor was discharged from Jericho, reportedly due to his negative attitude and behavior and his failure to respond adequately to treatment. He did not contact the probation department and report his discharge, even though he had been instructed to do so. On September 2, 2016, the Sonoma County trial court summarily revoked his probation and issued a warrant for his arrest. After serving 251 days in custody in San Francisco County jail on an unrelated probation violation, Vidor was returned to Sonoma County on May 30, 2017. Vidor admitted his probation violation in this matter on July 17, 2017. On September 19, 2017, the trial court terminated his probation as unsuccessful and executed the previously imposed sentence of 10 years, eight months. (*Vidor II*, *supra*, A156690.) Vidor timely appealed.

After appellate counsel filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436, we affirmed Vidor's conviction in an unpublished opinion filed

---

[6] It appears that this report was not submitted with Vidor's motion.

on September 27, 2018, but remanded the case to allow "the trial court to properly consider the custody credits [Vidor] is entitled to in the case." (*Vidor I, supra*, A152527.) After the trial court declined to adjust the custody credits, Vidor again appealed. While we agreed with the trial court's ruling on credits, we conditionally reversed appellant's conviction and directed the court to conduct a hearing on his suitability for mental health diversion under section 1001.36. (*Vidor II, supra*, A156690.)

On August 27, 2021, Vidor filed a motion seeking mental health diversion in the trial court. In addition to information from the reports detailed above, Vidor included more recent documentation. For instance, in 2021, prison psychologists reported that Vidor had been exhibiting symptoms of mania and "unusual/erratic behavior." In February 2021, he was "floridly psychotic" and was "highly suspected of being psychotic due to drug use." He had been written up several times for refusing urine testing. In July 2021, he again exhibited manic-like symptoms and was suspected of ongoing drug use, although it was unlikely that he had obtained drugs because he was in administrative segregation. The psychologist opined that Vidor likely suffered from an underlying bipolar disorder with psychotic features that may have contributed to his self-medicating behavior in the community.

After opposition, and following argument at a hearing conducted on October 21, 2021, the trial court denied the motion for mental health diversion, concluding that Vidor's mental health disorder was not a significant factor in the commission of the charged offenses. In denying Vidor's motion, the trial court noted that Dr. Apostle had determined in 2015 that Vidor might have an underlying mental health diagnosis, but that he needed to be off of illicit drugs before a diagnosis could be definitively determined. This suggested to the court that "the use of controlled

6

substances was clearly a substantial factor in [Vidor's] behavior as would appear to be the case in the underlying incident." The hospital team's 2015 section 1370 report also indicated that Vidor might have experienced a drug-induced psychosis, but he was not then exhibiting any psychotic or mood symptoms, reinforcing the court's view that Vidor's use of controlled substances was a substantial contributor to his criminal behavior. As to the more recent reports from the prison psychologist, the court found it was not inconsistent with the prior conclusions reached in the 2015 reports, namely, that Vidor's criminal behavior in the 2015 timeframe was the result of methamphetamine usage.

Vidor timely appealed and requested a certificate of probable cause, which was granted on October 25, 2021. While this appeal was pending, Vidor filed a motion for supplemental briefing regarding the impact of Senate Bill No. 1223 (2021-2022 Reg. Sess.) (Stats. 2022, ch. 735, § 1) on his mental health diversion claim. We granted the motion. Vidor then filed a second motion for supplemental briefing regarding the impact of amended section 1170, subdivision (b) and section 1385 on his sentence. We granted that motion as well.

## II. DISCUSSION

### A. *Mental Health Diversion Under Section 1001.36*

"Section 1001.36 authorizes a pretrial diversion program for defendants with qualifying mental disorders. The statute defines ' "pretrial diversion" ' as 'the postponement of prosecution, either temporarily or permanently, at any point in the judicial process from the point at which the accused is charged until adjudication, to allow the defendant to undergo mental health treatment.' " (*People v. Frahs* (2020) 9 Cal.5th 618, 626 (*Frahs*).) " 'If the defendant has performed satisfactorily in diversion, at the end of the period

7

of diversion, the court shall dismiss the defendant's criminal charges that were the subject of the criminal proceedings at the time of the initial diversion' and 'the arrest upon which the diversion was based shall be deemed never to have occurred.' " (*Id.* at p. 627.)[7] "[S]ection 1001.36 applies retroactively to all cases not yet final on appeal." (*Frahs,* at p. 632.)

Effective January 1, 2023, section 1001.36 was amended in several noteworthy ways. (See Stats. 2022, ch. 735, § 1.) The statute continues to define a qualifying mental health disorder to mean "a mental disorder as identified in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders, including, but not limited to, bipolar disorder, schizophrenia, schizoaffective disorder, or post-traumatic stress disorder, but excluding antisocial personality disorder, borderline personality disorder, and pedophilia." (Former § 1001.36, subd. (b)(1)(A); § 1001.36, subd. (b)(1).) Previously, however, a defendant could be eligible for mental health diversion if the court was "satisfied that the defendant suffer[ed] from" such a mental disorder. (Former § 1001.36, subd. (b)(1)(A).) As amended, the statute now requires a *diagnosis* of a qualifying mental health disorder. (§ 1001.36, subd. (b)(1).) Specifically, evidence of the defendant's mental disorder must "be provided by the defense and shall include a diagnosis or treatment for a diagnosed mental disorder within the last five years by a qualified mental health expert." (*Ibid.*)

Second, diversion remains appropriate only if "[t]he defendant's mental disorder is a *significant factor* in the commission of the charged offense." (§ 1001.36, subd. (b)(2); former § 1001.36, subd. (b)(1)(B), italics added.)

---

[7] Mental health diversion is statutorily unavailable for certain crimes, including murder, voluntary manslaughter, and various sexual offenses. (§ 1001.36, subd. (d).)

Previously, however, a court could "conclude that a defendant's mental disorder was a significant factor in the commission of the charged offense [only] if, after reviewing any relevant and credible evidence, . . . the court conclud[ed] that the defendant's mental disorder *substantially contributed* to the defendant's involvement in the commission of the offense." (Former § 1001.36, subd. (b)(1)(B), italics added.) Now, in contrast: "If the defendant has been diagnosed with a mental disorder, the court *shall find* that the defendant's mental disorder was a significant factor in the commission of the offense *unless there is clear and convincing evidence that it was not a motivating factor, causal factor, or contributing factor* to the defendant's involvement in the alleged offense." (§ 1001.36, subd, (b)(2), italics added.) In sum—although the bases for establishing the underlying criteria have changed—a defendant still proves his or her eligibility for pretrial diversion if: (1) the defendant suffers from a qualifying mental disorder; and (2) the disorder played a significant role in the commission of the charged offense. (§ 1001.36, subds. (a) & (b); see *Frahs, supra,* 9 Cal.5th at pp. 626–627.)

If a defendant establishes eligibility for mental health diversion under section 1001.36, the court must then determine whether the defendant is suitable for such diversion. (§ 1001.36, subd. (c).) Specifically, the court must consider whether: (1) the defendant's symptoms will respond to mental health treatment; (2) the defendant consents to diversion and waives his or her speedy trial right; (3) the defendant agrees to comply with treatment; and (4) the defendant will not pose an unreasonable risk of danger to public safety if treated in the community. (*Ibid.*; see *Frahs, supra,* 9 Cal.5th at pp. 626–627.)

Ultimately, "diversion under section 1001.36 is discretionary, not mandatory, even if all the requirements are met." (*People v. Gerson* (2022) 80

9

Cal.App.5th 1067, 1080; see § 1001.36, subd. (a) [noting that "the court may, *in its discretion*, and after considering the positions of the defense and prosecution, grant pretrial diversion to a defendant pursuant to this section," italics added].) "We therefore review for abuse of discretion the trial court's decision whether to grant a request for mental health diversion. [Citation.] 'A court abuses its discretion when it makes an arbitrary or capricious decision by applying the wrong legal standard [citations], or bases its decision on express or implied factual findings that are not supported by substantial evidence.' " (*Gerson*, at p. 1080.) " 'It is [defendant's] burden on appeal to establish an abuse of discretion and prejudice.' " (*People v. Pacheco* (2002) 75 Cal.App.5th 207, 213.)

## B. *Application of Amended Section 1001.36 Requires Remand*

Vidor contends that, since this matter was still pending when the above-described amendments to section 1001.36 became effective, remand is required so that the trial court can consider whether mental health diversion is appropriate under the new standards set forth in the revised statute. The Attorney General concedes the retroactive application of the amended statute but argues that the trial court's ineligibility determination under the former statute meets the criteria set forth in newly amended section 1001.36. Specifically, the Attorney General posits that the trial court's ruling denying diversion "identifies clear and convincing evidence supporting a conclusion that appellant's mental health disorder was not a motivating, causal, or contributing factor to his offenses." We conclude Vidor has the better argument.

It is well settled that a trial court abuses its discretion if it bases its decision on an incorrect legal standard. (*People v. Carmony* (2004) 33 Cal.4th

10

367, 378.) Here, through no fault of its own, the trial court considered Vidor's diversion eligibility based on factors that are no longer applicable. For example, the focus of the trial court's analysis was on whether Vidor had a qualifying mental health disorder *at the time* he committed the criminal acts at issue. Essentially, the court concluded that there was extensive evidence Vidor's substance abuse was a significant factor in his criminal behavior and that, even if the record supported the conclusion that Vidor suffered from a qualifying mental health disorder in the years after the offenses, the evidence was insufficient to prove that any such disorder "*substantially contributed* to the defendant's involvement in the commission of the offense." (Former § 1001.36, subd. (b)(1)(B), italics added.) Now, in obvious contrast, a defendant need only establish a "diagnosis or treatment for a diagnosed mental disorder within the last five years." (§ 1001.36, subd. (b)(1).) Based on the record before us, Vidor may be able to prove he suffered from a qualifying mental health disorder in this later timeframe. The Attorney General implicitly concedes as much.

Next, we cannot agree with the Attorney General that a finding by the trial court under the former statute that a mental health disorder did not "substantially contribute" to the charged offenses is essentially the functional equivalent of the finding required by amended section 1001.36 that the disorder was not a "motivating factor, causal factor, or contributing factor" to the defendant's criminal conduct. (Former § 1001.36, subd. (b)(1)(B); § 1001.36, subd, (b)(2).) In short, "substantial" implies something of considerable importance while "contributing" standing alone means merely to help cause a particular result. This appears to be a significant broadening of the eligibility standard. At the very least, Vidor should be allowed to argue his eligibility under the revised language before the trial court.

11

Moreover, Vidor's required showing on remand is further diluted by the revised statute's alteration of the burden of proof. Previously, the trial court found by a preponderance of the evidence that, even if Vidor had a qualifying mental health disorder, it did not "substantially contribute" to his criminal behavior. On remand, the burden is now on the prosecutor to prove by clear and convincing evidence that such a disorder did not motivate, cause, or contribute to Vidor's criminal conduct. (§ 1001.36, subd. (b)(2).) It goes without saying that this is a significant alteration in the showings required by the parties.

Indeed, the legislative history regarding these recent amendments to section 1001.36 supports our conclusion that the revisions were intended to substantially broaden the availability of mental health diversion in appropriate cases.[8] The legislation was enacted in response to a report from the Committee on Revision of the Penal Code (CRPC) which "concluded that the mental health diversion law has been substantially underutilized due, in part, to its narrow eligibility requirements[.] [¶] The report states, 'For example, LA County has only diverted a few hundred people using the law. Yet an estimated 61% of people in the LA County jail system's mental health population were found to be appropriate for release into a community-based diversion program, according to a recent study by the RAND Corporation.' [¶] Other more specialized mental health diversion statutes in California do not require such a specialized showing, including military pre-trial diversion and veteran diversion, nor do several other states with mental health

---

[8] On our own motion, we take judicial notice of the relevant legislative history for Senate Bill No. 1223 (2021-2022 Reg. Sess.). (Evid. Code, §§ 452, subd. (c), 459, subd. (a); *Kaufman and Broad Communities, Inc. v. Performance Plastering, Inc.* (2005) 133 Cal.App.4th 26, 30.)

diversion statutes (namely, Florida and Illinois). Instead, these statutes recognize that in most cases, a person's diagnosed mental disorder is connected to the offense." (Sen. Com. on Pub. Safety, Rep. on Sen. Bill No. 1223 (2021-2022 Reg. Sess.) March 29, 2022, p. 5.) Among other changes, the legislation codifies the recommendation from CRPC that "the law be changed to simplify the procedural process for obtaining diversion by presuming that a defendant's diagnosed 'mental disorder' has a connection to their offense. A judge could deny diversion if that presumption was rebutted or for other reasons currently permitted under the law, including finding that the individual would pose an unreasonable risk to public safety if placed in a diversion program." (Assem. Com. on Pub. Safety, Rep. on Sen. Bill No. 1223 (2021-2022 Reg. Sess.), as amended June 23, 2022, pp. 6–7.)

In the end, we are simply not persuaded that the trial court would necessarily deny Vidor's motion for mental health diversion if operating under the amendments to section 1001.36. We will therefore issue a limited, conditional remand with directions to the court to reconsider the motion within this new framework. We express no view regarding how the trial court should exercise its discretion in doing so.

## C.    *Impact of Other Changes in the Sentencing Laws*

"While this appeal was pending, Senate Bill No. 567 (2021–2022 Reg. Sess.) amended section 1170, subdivision (b), making the middle term of imprisonment the presumptive sentence. (§ 1170, subd. (b); Stats. 2021, ch. 731, § 1, effective Jan. 1 2022.) A trial court may now impose an upper term sentence only where there are aggravating circumstances in the crime and the defendant has either stipulated to the facts underlying those circumstances or they have been found true beyond a reasonable doubt. (§ 1170, subd. (b)(1)–(2).)" (*People v. Flores* (2022) 75 Cal.App.5th 495, 500

13

(*Flores*), fn. omitted.) The amended statute also adds a third acceptable method of factfinding, permitting courts to "consider [] the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury." (§ 1170, subd. (b)(3).) These amendments to subdivision (b) of section 1170 apply retroactively to all defendants whose judgments were not final as of January 1, 2022, the legislation's operative date. (*People v. Lopez* (2022) 78 Cal.App.5th 459, 465 (*Lopez*).)

Also in 2021, "the Legislature enacted Senate Bill No. 81 (2021-2022 Reg. Sess.) (Senate Bill No. 81), which amended section 1385 to specify factors that the trial court must consider when deciding whether to strike enhancements from a defendant's sentence in the interest of justice." (*People v. Sek* (2022) 74 Cal.App.5th 657, 674.) Effective January 1, 2022, section 1385, subdivision (c)(2) now provides: "In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety." According to Vidor, subparagraph (D)—" '[t]he current offense is connected to mental illness' "—is a circumstance relevant to his offenses. By its terms, this revision to section 1385 applies "to all sentencings occurring after January 1, 2022." (§ 1385, subd. (c)(7).)

Vidor argues that this case should be remanded so that the trial court can consider resentencing him under both of these recent changes in the law. The Attorney General argues that remand for resentencing is not required under either statutory amendment. We agree with the Attorney General.

14

### 1. *Additional Background*

The presentence report in this matter states that Vidor was convicted of seven misdemeanor offenses between 2006 and 2014. In March 2015, Vidor was convicted of felony unlawful taking of a vehicle (Veh. Code, § 10851, subd. (a)) after he unsuccessfully attempted a carjacking in a San Francisco parking garage. In April 2015, shortly before the offenses at issue here, Vidor was arrested in Oakland after he intentionally backed a stolen car into a patrol vehicle that had been following him. A warrant was outstanding for his arrest in the March 2015 matter because he had failed to comply with the terms of his formal probation in that case. When interviewed, Vidor stated that the only reason he had committed the instant offenses was his drug use. He reported "he was delusional at the time, believed that people were reading his mind, and that they were telling him to 'do things.' "

As stated above, the court initially granted probation in July 2016, imposing but suspending a sentence of 10 years, eight months. (*Vidor II*, *supra*, A156690.) The sentence was based on the upper term of nine years for the violation of section 215, plus one year for the section 667.9 enhancement, plus eight months (one-third of the midterm) for the violation of Vehicle Code section 2800.2. A three-year term for violation of section 368 was stayed pursuant to section 654. In determining this sentence, the trial court found several factors in aggravation. (See rule 4.421(a)(1), (3) & (b)(1), (2), (4).) As it explained to Vidor: "[T]his crime did involve great violence, and you took advantage of a vulnerable person, 85 years old who was just minding his own business putting his groceries in his car. Your conduct was violent. Your pattern of behavior is of increasing seriousness. You were technically on probation in San Francisco[,] but you never reported and never actually got

15

any benefit out of that." In mitigation, the court found that Vidor had a "serious drug and alcohol issue," had acknowledged guilt early in the proceedings, and had expressed remorse to the victim. (See rule 4.423(b)(2), (8).) The court concluded: "The factors in aggravation, due to the seriousness of this matter, do outweigh the factors in mitigation."

Nevertheless, the court suspended sentence, concluding there were unusual circumstances justifying probation because it had seen carjacking cases with worse facts and Vidor was struggling with "very, very serious drug and alcohol issues." However, in granting probation, the court reiterated: "[T]his is a serious crime, but not a more serious type of carjacking but for the fact that the victim is 85 years old. That is the worst fact and that is a very serious matter." It further opined: "I believe that what I am willing to do is give you an opportunity at probation with execution of sentence suspended. But when I say an opportunity I mean one opportunity. Your behavior has escalated substantially [since] December 2014." The court also stated that "it would be easy to send you to prison because of what you've done and how you've done it." And it cautioned: "If you fail to follow through with the directives [of probation] here, you are writing your own ticket into the state prison facility."

Thereafter, in July 2017, Vidor admitted violating the terms of his probation by leaving his drug treatment program without consent. After noting "[i]t was a one shot deal," that Vidor's "behavior [had] escalated substantially," and that he had been "noncompliant with probation," the trial court rejected a defense request that he be sent to a dual diagnosis program and executed the previously imposed sentence of 10 years, eight months. When Vidor pleaded not to be sent to prison, the court responded: "Well the

16

initial offense was so egregious that you could have been sent to prison on that—at that time. I gave you the one opportunity, sir."

### 2. *No Need for Resentencing Based on Changes to the Law*

The Attorney General concedes that the amendment to section 1170, subdivision (b) applies retroactively to Vidor's case because it is not yet final. However, this does not necessarily mean that resentencing is required. A number of appellate courts have concluded that the failure to comply with newly enacted subdivision (b)(2) of section 1170 can be harmless, although there is disagreement regarding the correct test for harmlessness in this context. (See, e.g., *People v. Lewis* (2023) 88 Cal.App.5th 1125, 1137–1138 (*Lewis*) [appellate court should first determine whether the jury would have found at least one aggravating circumstance true beyond a reasonable doubt, and, if so, further determine whether the record clearly indicates that the trial court would have imposed the same sentence under the new law]; *Lopez*, *supra*, 78 Cal.App.5th at p. 467, fn. 11 [harmless if the jury would have found *all* of the aggravating circumstances that the trial court relied on true beyond a reasonable doubt]; *Flores*, *supra*, 75 Cal.App.5th at p. 500 [harmless if the jury would have found at least one aggravating circumstance that the trial court relied on true beyond a reasonable doubt].) The issue is currently pending in the Supreme Court. (*People v. Lynch* (May 27, 2022, C094174) [nonpub. opn.], review granted Aug. 10, 2022, S274942.)

We need not weigh in on this controversy here, however, because we conclude that the failure to apply the amendments to section 1170, subdivision (b)(2) in this matter is harmless under any of these analytical frameworks. As stated above, the trial court relied on five aggravating factors in sentencing Vidor to the upper term for carjacking: (1) the crime involved great violence; (2) the victim was particularly vulnerable; (3) Vidor's

17

conduct was violent, indicating a serious danger to society; (4) Vidor's pattern of convictions was increasingly serious; and (5) Vidor was on probation at the time of the crime. (See rule 4.421(a)(1), (3) & (b)(1), (2), (4).) We conclude that a jury would have found all of these aggravating factors true beyond a reasonable doubt.

Pushing an 85-year-old gentleman out of a moving car at speeds of 15 to 20 miles per hour is obviously violent and could have led to serious injury or death. (Compare *People v. Berdoll* (2022) 85 Cal.App.5th 159, 164 [the defendant stipulated to a factual basis for the plea based on the police reports, which "contained the uncontradicted foundation for the findings of aggravating sentencing factors"].) And the crime of carjacking, in and of itself, has been recognized by the Legislature as a violent felony. (§ 667.5, subd. (c)(17) [including carjacking in its list of "extraordinary crimes of violence against the person"].) Moreover, no one would argue that an 85 year old is not "particularly vulnerable." Indeed, at sentencing, defense counsel conceded that the "victim was physically vulnerable due to his age," and Vidor had previously admitted to felony elder abuse.

As for Vidor's criminal history, the record establishes that his crimes were of increasing seriousness. After committing several misdemeanors over the course of eight years (reckless driving, two DUIs, a license violation, drunk in public, possession of drug paraphernalia, and vandalism), Vidor engaged in a flurry of more serious crimes involving automobiles in the short period between December 2014 and July 2015 (felony taking of a vehicle conviction; pending felony assault with a deadly weapon on a police officer and unlawful taking of a vehicle; and the instant felony convictions for carjacking, fleeing a pursuing police officer's vehicle while driving recklessly, and elder abuse). And, as the presentence report indicates, Vidor was on

18

formal probation with respect to his March 2015 offense when he committed the crimes here at issue.[9]  In sum, we conclude a jury would find beyond a reasonable doubt all of the factors in aggravation relied upon by the trial court, and certainly at least one.  (See *Lewis*, 88 Cal.App.5th at p. 1137 ["First, we must ask whether a defendant *could* still lawfully be sentenced to an upper term under federal and state law.  This requires us to conclude that the jury would have found at least one aggravating circumstance true beyond a reasonable doubt."].)

Second, we have no trouble determining that the record "clearly indicates" the trial court would have imposed the same sentence under amended section 1170, subdivision (b).  (See *Lewis*, 88 Cal.App.5th at pp. 1137–1138.)  With respect to the factors in aggravation, the court repeatedly stressed the seriousness of the crime and the victim's vulnerability.  It stated that carjacking is a "very serious crime" and that the victim's age made this "a very serious matter" and also made the victim vulnerable.  The court described the offense as follows:  "You went up to a vulnerable person, who was 85 years[] old in a parking lot, and he was not in his car because he was loading groceries in, you got in the driver's seat and said thank you very

_____

[9] We see no reason to doubt Vidor's criminal history as set forth in the presentence report.  Presumably, if the trial court was operating under the amended law, the prosecutor would provide certified records of conviction and/or other official records with respect to Vidor's offenses.  (See § 1170, subd. (b)(3) [allowing the court to "consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury"]; *People v. Towne* (2008) 44 Cal.4th 63, 81 [prior convictions and probation status are well documented in official records maintained by law enforcement agencies].)  Thus, the jury would only need to determine if the criminal history supported the findings in aggravation, a relatively simple task.

much and you were taking the car and he tried to get in the car and then you pushed him out. These are egregious facts." The court again highlighted the victim's vulnerability, remarking: "[Y]ou pushed him out of the car so he had some luckily superficial injuries, but the emotional injury from what you did is I'm certain significant because that would be scary to be in a parking lot at 85 years old and have someone come up and take advantage like that." Finally, when it executed the suspended sentence after Vidor admitted violating probation, the court reminded Vidor that "the initial offense was so egregious" that he could have been sent to prison at that time.

The court also discussed the increasing seriousness of Vidor's crimes repeatedly and at length, commenting variously that his behavior had been "escalating," that it was a "major escalation," that it had "escalated substantially," and that it was "increasing in seriousness." And after Vidor violated probation, the court opined: "We can't keep going on [sic] like this. His behavior has escalated substantially. . . . Mr. Vidor has left every program he's been sent to and has been noncompliant with probation." If anything, application of the revised statute requiring certified records of conviction with respect to Vidor's offenses would make even clearer the escalation in his offenses and his poor performances on probation as factors in aggravation.

It is true that the trial court found several factors in mitigation, including that Vidor was struggling with "very, very serious drug and alcohol issues." However, it found that the factors in aggravation outweighed any mitigating factors due to the seriousness of the offenses, even before Vidor violated his probation. And, as detailed above, the court repeatedly stressed it was willing, on these facts, to give Vidor only a single chance at a suspended sentence before his behavior would write his "own ticket into the

20

state prison facility." We see no likelihood the court would fail to impose the same upper term sentence under the new law. Under any suggested framework, then, the trial court's failure to have the amended statute before it when selecting the upper term for Vidor's carjacking charge was harmless.

As a final matter, we note that we are not remanding for resentencing in this case. Instead, we are issuing a limited, conditional remand solely to allow the trial court to reconsider Vidor's request for mental health diversion under amended section 1001.36. Under such circumstances, Vidor cannot avail himself of the recent amendments to section 1385 codified by Senate Bill No. 81. As stated above, those amendments expressly state that they are only applicable "to all sentencings occurring after January 1, 2022." (§ 1385, subd. (c)(7).) Here, Vidor will either successfully complete diversion and his convictions will be dismissed; the court will conclude diversion is still inappropriate and reinstate his existing sentence; or Vidor will fail to complete diversion successfully and the court will reinstate the sentence. Under any scenario, no resentencing is contemplated.

## III. DISPOSITION

The order denying Vidor's request for mental health diversion is reversed and the judgment is conditionally reversed and remanded for reconsideration of Vidor's request under newly amended section 1001.36. If the trial court finds that mental health diversion is appropriate in light of amended section 1001.36, the court shall grant the motion and order diversion. If Vidor successfully completes diversion, the court shall dismiss the criminal charges. However, if the court determines that mental health diversion is not appropriate, or if the court orders a program of diversion but Vidor fails to complete it successfully, the court shall reinstate the judgment.

21

DEVINE, J.[*]

WE CONCUR:


MARGULIES, ACTING P.J.


BANKE, J.


A163804N

---

[*] Judge of the Contra Costa County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.